UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 06-CR-115 (MJD/SRN)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Eddie Ray Jackson,** | |
| **Defendants**. | |

Erika R. Mozangue, Esq., on behalf of Plaintiff

Mark D. Nyvold, Esq., on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (Doc. No. 26).

This matter is set to be tried before the Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota, on July 10, 2006. This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

**I.     BACKGROUND**

An Indictment was filed on April 19, 2006, charging Defendant with two counts of counterfeiting securities, in violation of 18 U.S.C. § 513(a). (Indictment, Doc. No. 17.)

At the criminal motions hearing, the Court received in evidence Government Exhibit 1: the application, affidavit, search warrant, inventory and return for a residence on Knox Avenue North in Minneapolis, Minnesota. Special Agent Tom Volk, United States Secret Service, testified at the hearing on behalf of the Government.

## II.   FACTS

As the affidavit supporting the search warrant application states, in April 2004, the United States Secret Service opened an investigation involving Defendant and the production of counterfeit obligations and securities in the Minneapolis area. (Aff. of R. Schulenberg, Govt. Ex. 1.) On approximately April 14, 2004, Defendant provided a confidential informant (CI) and an undercover Secret Service Agent $5000 in counterfeit American Express traveler's checks in exchange for $600 in genuine United States currency. The meeting was recorded via audio and video surveillance.

On February 15, 2006, the same CI and an undercover officer from the Hennepin County Sheriff's Department arranged to meet Defendant. Defendant and an unidentified person met with the CI inside a Minneapolis McDonald's restaurant. Secret Service agents and Hennepin County Sheriff's Department personnel observed and recorded this meeting. Defendant and the unidentified person provided the CI with $10,000 in counterfeit Visa traveler's checks in exchange for $2,000 in United States currency. (Id.)

On February 16, 2006, the CI placed a consensually monitored, recorded telephone call to Defendant. Defendant and the CI discussed the previous meeting and a future meeting, as well as the

quality of the counterfeit Visa checks.  Id.  Defendant advised that $30,000 in counterfeit Visa checks could be obtained approximately 3-4 days later.  Id.

On March 8, 2006, the CI placed another consensually monitored telephone call to Defendant, discussing the upcoming exchange of $30,000 in counterfeit Visa checks for $6,000 United States currency.  On March 20, 2006, the CI again placed a consensually monitored telephone call to Defendant discussing a meeting on Wednesday, March 22, 2006, at the McDonald's at 2929 Hennepin Avenue, Minneapolis.  Id.

On March 22, 2006, Defendant failed to appear for the arranged meeting.  He exchanged phone calls with the CI, explaining that he could not make the meeting due to a dental appointment.

On March 27, 2006, the CI made a consensually monitored telephone call to an unknown person who later identified himself as "Al Vitto."  According to Al Vitto, Defendant was scheduled to return to the Minneapolis area at that time for a meeting with his probation officer.  Al Vitto indicated that he still had the "demos" from "last week" located at an address on Knox Avenue North, in Minneapolis.  Al Vitto further stated, "[Defendant] told me to rotate them for him.  He gave two different sets of stacks, give them all to you for the price.  I know he trusts you. $10,000 in a stack, I think."  Id.

On March 28, 2006, the affiant of the affidavit, Secret Service Special Agent R. Erich Schulenberg checked the Minnesota Department of Motor Vehicles records, looking for a license associated with Defendant.  The records revealed that Defendant possessed a current Minnesota driver's license with a Minneapolis address matching the one provided by Al Vitto on Knox Avenue North.  Id.

Also on March 28, 2006, Special Agent Schulenberg spoke with Dan Freedland of the Hennepin County Probation Reporting Center. Mr. Freedland stated that Defendant was currently on Hennepin County probation for driving offenses. He had a scheduled appointment at the Probation Reporting Center between 4:30-6:30 p.m.

Based on Special Agent Schulenberg's knowledge, training and experience in locations where counterfeit securities or obligations are discovered, he averred that he had probable cause to believe that evidence of counterfeiting would be found in the Knox Avenue residence. On March 28, 2006, United States Magistrate Judge Janie S. Mayeron reviewed the affidavit and signed the search warrant.

Special Agent Tom Volk of the Secret Service testified that the search was executed on March 29, 2005 at 11:15 a.m. He, along with a team of officers, approached the residence and knocked loudly on the front door. He shouted words to the effect of "police, search warrant, open the door!" He knocked a total of three times and waited for approximately 30 seconds. He could see inside the house. Special Agent Volk opened the exterior door and knocked on an interior, glass door. He heard loud music playing and when the door rattled, it opened slightly. He waited approximately 60 seconds. Special Agent Volk pushed open the door to look inside without actually entering the house. He immediately saw a person – not the Defendant – run up the stairs. Upon his command, the person came down the stairs and officers secured the house. The officers searched the house pursuant to the warrant, leaving a copy of the inventory at the residence.

The inventory shows that a wide variety of evidence was seized including ID cards, booklets of counterfeit traveler's checks, check/card- making software, a social security card, blank checks, a book entitled "How to Make Driver's Licenses and Other ID on Your Home Computer," blank plastic

4

cards with magnetic strips and miscellaneous mail in the names of various people.  (Inventory, Govt. Ex. 1.)

### III.   DISCUSSION

#### A.   Probable Cause

Defendant moves to suppress all evidence obtained as a result of search and seizure. The only search at issue is that of Defendant's residence on Knox Avenue North in Minneapolis.  The Government responds that there was ample probable cause for the issuance of the search warrant.

The Court therefore turns to the inquiry of whether the "four corners" of the warrant affidavit supplied a substantial basis for concluding evidence of wrongdoing would be found in the place to be searched.

"It is well-established that courts may *not* look to facts outside the affidavit in determining the existence of probable cause," United States v. Martin, 833 F.2d 752, 757 (8th Cir. 1987) (Lay, C.J., concurring), cert. denied, 494 U.S. 1070 (1990); rather, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999).  Therefore, while Defendant disputes certain facts within the affidavit, that argument has no bearing on this Court's review of the existence of probable cause, as the Court focuses solely on the four corners of the affidavit.

"Probable cause exists if, based upon a common-sense consideration of all the circumstances set forth in the supporting affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "The critical element in a reasonable search is not that


the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

Importantly, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision" whether a showing of probable cause has been met. Illinois v. Gates, 462 U.S. 213, 235 (1983). Rather, "'in dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 231 (citations omitted).

"[T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination" as to the existence of probable cause. United States v. Leon, 468 U.S. 897, 914 (1984); accord Gates, 462 U.S. at 236-37. In this regard, this Court does not make a de novo review of the sufficiency of the affidavit. Gates, 462 U.S. at 236; accord United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) ("[A] district court should not make a de novo determination of probable cause . . . ."). Rather, "the decision to issue the warrant is to be upheld if supported by substantial evidence in the record," Reivich, 793 F.2d at 959, or, in other words, "so long as the [issuing Judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236. Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983).

Finally, "[w]hen an affidavit is based in substantial part on information from an informant, the

informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). In the end, these considerations "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 230, 236.

      Here, the Court concludes that Special Agent Schulenberg's affidavit supplied probable cause for the issuance of the warrant. In 2004, the CI and an undercover Secret Service Agent jointly met with Defendant, who provided them with $5,000 in counterfeit traveler's checks. The meeting was recorded. In February 2006, the same CI and another undercover officer purchased $10,000 worth of counterfeit traveler's checks for $2,000 in United States currency from Defendant. (Affidavit, Govt. Ex. 1.) This meeting was recorded.

      In February and March of 2006, the CI placed several consensually monitored phone calls to Defendant, arranging another purchase. In late March 2006, the CI phoned a person identified as Al Vitto. Al Vitto provided an address for Defendant and stated that Defendant would be in the Minneapolis area because of a scheduled meeting with a probation officer. Al Vitto indicated that counterfeited "demos"were at Defendant's Knox Avenue address and Defendant had instructed him to sell them to the CI for a specific price.

      The fact that the affidavit failed to discuss the CI's history of reliability is not an essential element in finding probable cause. See Reivich, 793 F.2d at 959. This is so because "[t]he Supreme

Court in part specifically adopted the flexible 'totality of the circumstances' test for probable cause so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." Id. (citing Gates, 462 U.S. at 233-35).   As to credibility, the CI was not merely an anonymous tipster.  He is identified throughout the affidavit as "CI #04-1263" and was personally involved in undercover operations, frequently accompanied by undercover law enforcement officers.  His conversations with Defendant, whether alone or in the company of undercover officers, were recorded and subject to verification and review.  This, in itself, represents a strong basis for the issuing Judge's finding of probable cause.

   Whatever Al Vitto's true identity, he supplied an address for Defendant, which Special Agent Schulenberg verified as Defendant's address with the Department of Motor Vehicles.  Mr. Vitto indicated that counterfeited items were at Defendant's residence.  He also stated that Defendant would be in Minneapolis for a scheduled appointment with his probation officer on or about March 26, 2006.  Special Agent Schulenberg verified this information with the Hennepin County Probation Reporting Center. (Id.)

   The Court is satisfied that the information derived from the CI and Al Vitto was reliable. The information provided by the CI and Mr. Vitto was verified by law enforcement or, in the case of the monitored calls, contemporaneously observed by law enforcement.

   Based on his training and experience in locations where counterfeit securities or obligations are discovered, Special Agent Schulenberg indicated that other devices used in the manufacture of such securities are often found as well, including computers, printers, scanners and paper.  (Id.)  The list of items to be seized included such devices.  (See Attachment B., Items to Be Seized, Govt. Ex. 1.)

Given the foregoing, the Court finds that all of the information viewed in totality, considering "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," Gates, 462 U.S. at 231, formed a substantial basis for concluding that there was probable cause (a fair probability) to believe that the place to be searched listed in the warrant would uncover evidence of illegalities as to Defendant.

"And, even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed." United States v. Johnson, 219 F3d 790, 791 (8th Cir. 2000) (citing Leon, 468 U.S. at 923). There is absolutely no indication that Magistrate Judge Mayeron abandoned her judicial role, that Special Agent Schulenberg knew of the falsity or was reckless with regard to the truth of anything in his affidavit, that the warrant was facially deficient, or that the warrant was so lacking in probable cause as to render official belief in it unreasonable. See generally Leon, 468 U.S. at 923 (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable cause much less than that exhibited here).

**B.     Execution of Search Warrant**

Finally, although Defendant did not specifically challenge the search on grounds that its execution was improper, the Government submitted the testimony of Special Agent Volk regarding the execution of the warrant and defense counsel cross-examined him. Special Agent Volk testified that he complied with the "knock and announce" rule, was constructively denied admittance, therefore, forced

9

entry was permissible.

Under 18 U.S.C. § 3109, an officer may force entry to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance." 18 U.S.C. § 3109.  The statute does not require an affirmative refusal of admittance in order to permit forced entry, but "encompasses circumstances that constitute constructive or reasonably inferred refusal."  United States v. Lucht, 18 F.3d 541, 549 (8th Cir. 1994), cert. denied, 513 U.S. 949 (1994) (citations omitted).  Whether police officers have waited long enough after knocking to infer constructive denial of entry does not turn on any "hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant."  Id.

In United States v. Vesey, the 8th Circuit found reasonable under the Fourth Amendment a 10-second delay prior to entry into a small apartment in the afternoon to serve a warrant to search for drugs after police pounded on the door, repeatedly yelling, "police department, search warrant, open the door!"  338 F.3d. 913, 916 (8th Cir. 2003).  Specifically, it was reasonable for the officers to conclude that their pounding and yelling would have alerted anyone in the small apartment to their presence, particularly since it was likely that the occupants would be awake in the afternoon.  Id. Likewise, in Lucht, the 8th Circuit held that a 20-second delay and a 25-60-second delay satisfied the "knock and announce" rule in the execution of two warrants.

The Court in this case is satisfied that the officers executing the search warrant complied with the "knock and announce" rule in light of the circumstances surrounding the service of the warrant.  The warrant was executed on March 29, 2006, a Thursday, at approximately 11:15 a.m. -- a time when

persons may reasonably be expected to be awake.  Special Agent Volk testified that he announced his presence several times, waited approximately 30 seconds and heard no response.  He opened the exterior door, knocked again, waited 60 seconds, looked inside when the door opened and observed a man running upstairs.  In light of the totality of circumstances, the Court finds that the execution of the search warrant on Defendant's residence complied with the "knock and announce" rule and did not violate Defendant's Fourth Amendment rights.

For all of the above reasons, the Court recommends that Defendant's motion to suppress be denied.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1. Defendant's Motion to Suppress Obtained in Violation of the Fourth Amendment (Doc. No. 26) be **DENIED**.

Dated: June 14, 2006

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by **June 28, 2006,** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.